## 38161. ROSE v. THE STATE.

WELTNER, Justice.

Larry Boyd Rose was shot and killed by use of his own handgun. Gloria Joe Spicer Rose, the victim's common-law wife, subsequently was convicted of murder and sentenced to life imprisonment. Her motion for a new trial was denied, and she appeals.

The victim and Ms. Rose lived together in a house in Riverdale, Georgia, along with Justine Spicer, a daughter of Ms. Rose, and two grandchildren by another daughter of Ms. Rose. At the time of the killing Justine was nine months pregnant.

From the evidence adduced at trial the jury was entitled to find the following: when Ms. Rose awoke on the morning of January 14, 1981, Justine was experiencing labor pains. Ms. Rose decided that, rather than go to work, she, Justine and the grandchildren would drive to the residence of her son, David Spicer, a few miles away, so that David could keep the children while she and Justine went to the hospital. At about 8:45 a.m. the foursome exited the house and began to get into the car. Ms. Rose announced that she was going back inside for a sweater. She re-entered the house, took the victim's handgun from a hutch in the kitchen, proceeded to her bedroom, and shot the victim once in the back of the head as he was sleeping. She then wiped the pistol with a towel, threw the pistol into the backyard, and returned to the car, leaving doors open in an apparent attempt to

cover up the murder. The group then left in the car, picked up David Spicer and returned to the house in Riverdale, stopping along the way to purchase some items for breakfast. Upon returning to the house Ms. Rose "discovered" the body. One of the group called the Clayton County Police, who arrived at the scene shortly after 9:30 a.m.

The State was allowed to place into evidence three incriminating statements given by Ms. Rose, one written and two tape-recorded. In the first two statements Ms. Rose admitted the killing but gave few details surrounding the incident. In the third, Ms. Rose admitted the details of the killing above related. She also stated that she had wiped the gun with a towel, which she left in the house on the washer or dryer. The State was permitted to place into evidence a consent-to-search form executed by Ms. Rose, and a brown towel found in the search. Laboratory analysis of the towel revealed traces of lead residue, consistent with its having been used to wipe a recently-fired gun.

1. On February 4, 1982 we remanded this case to the trial court with instruction that an *in camera* inspection of the State's file be conducted, as requested by appellant prior to trial, and in accordance with our holding in *Tribble v. State,* 248 Ga. 274 (280 SE2d 352) (1981). In his report subsequently filed with this court, the trial judge concluded that a taped interview of Justine by police officers could be considered exculpatory, as "[t]he witness being interviewed was (according to her taped statement) in the immediate presence of the accused during the period of time in which the death occurred yet she relates nothing consistent with guilt."

Justine Spicer testified for the defense at a Jackson-Denno hearing and at trial. Her trial testimony paralleled the taped interview, except that in the interview she did not mention the incident wherein appellant returned briefly to the house for a sweater while Justine and the children remained in the car. However, defense counsel was aware of this discrepancy and questioned her about it at trial.

In addition, a police officer testified at trial that apparent inconsistencies in the times related by Justine Spicer in the taped interview led police to focus on appellant as a suspect for the first time. While Justine's statement conceivably might have been helpful to the defense in questioning the police witness with respect to the preliminary stages of the investigation, nevertheless appellant has failed to meet her burden of showing that she was denied beneficial evidence which was so important that its absence prevented her receiving a fair trial, and materially prejudiced her case. *Taylor v. State,* 243 Ga. 222 (1) (253 SE2d 191) (1979); *Wisdom v. State,* 234 Ga. 650, 652 (217 SE2d 244) (1975).

2. Ms. Rose complains of the admission into evidence of the three incriminating statements given to police by her, as well as a written consent-to-search form executed by her and a brown towel found pursuant to that consent. There was some evidence that police officers told Ms. Rose that her children or grandchildren might become involved in some way if she did not " . . . tell [police] the whole story." The trial court held a lengthy Jackson-Denno hearing, after which he concluded that the statements were voluntary and should be submitted to the jury. A similar hearing was held with respect to the consent-to-search, on a motion to suppress the brown towel. We find no clear error in the trial court's findings as to factual determinations and credibility relating to the admissibility of the incriminating statements and the towel. *Crawford v. State,* 245 Ga. 89 (2) (263 SE2d 131) (1980). The jury was instructed thoroughly as to their consideration of the statements, including the standards to be applied in determining voluntariness.

3. Ms. Rose contends that the trial court erred in failing to charge, as requested, that "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." See Code Ann. § 38-420. The court properly refused to give this charge, as the statements given by appellant were corroborated by, among other things, the discovery of the gun in the backyard and the discovery of the brown towel in appellant's house.

She also contends that the trial court erred in refusing to charge the jury as to what constitutes an arrest under Code Ann. § 27-201, on the ground that this was relevant to a determination of the voluntariness of her statements. As we have previously stated, the jury was instructed thoroughly as to the requisites of voluntariness. One of the factors the jury was instructed to consider was " . . . whether the accused was interrogated before or after formal charges had been filed against her."[1] Further, the fact that a defendant might be illegally detained at the time of making a statement does not render it inadmissible. *Thompson v. State,* 248 Ga. 343 (2) (285 SE2d 685) (1981).

Appellant contends that portions of the jury charge were burden-shifting, in violation of Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). After defining murder and malice, express and implied, the trial court continued as follows:

"Ladies and gentlemen of the Jury, the Court further charges you that the law presumes every intentional homicide to be malicious

---

[1] It appears that a warrant for appellant's arrest was not obtained until after she had given police the incriminating statements.

until the contrary appears from circumstances of alleviation, justification, mitigation or excuse.

"Now, the acts of a person of sound mind and discretion are presumed to be the product of the person's will, but this presumption may be rebutted.

"The Court further charges you that a person of sound mind and discretion is presumed to intend the natural and probable consequence of his or her acts. If such person uses a weapon in a manner in which such weapon is ordinarily employed to produce death, and thereby causes the death of a human being, the law presumes the intent to kill. However, this presumption may be rebutted.

"The Court further charges you that a person will not be presumed to act with criminal intent, but the trier of the facts, and that is you, the Jury in this case, may find such intention upon consideration of the words, the conduct, the demeanor and motive, if any, and all the facts and circumstances connected with the act for which the accused is prosecuted.

"Ladies and Gentlemen of the Jury, before you would be authorized to find the defendant guilty of the offense of murder, you must first find and believe beyond a reasonable doubt that this defendant did, with malice aforethought, either expressed or implied, cause the death of Larry Boyd Rose."

The trial court also charged concerning the presumption of innocence in favor of the accused, and the burden of the State to prove each essential element of the crime beyond a reasonable doubt.

Taken as a whole, this charge would not lead a reasonable juror to believe that any burden was placed on appellant to disprove malice or intent. *Wells v. State,* 247 Ga. 792 (2) (279 SE2d 213) (1981); *Lackey v. State,* 246 Ga. 331 (11) (271 SE2d 478) (1980); *Franklin v. State,* 245 Ga. 141 (8, 9) (263 SE2d 666) (1980); *Skrine v. State,* 244 Ga. 520 (260 SE2d 900) (1979). Nonetheless, we disapprove and will continue to disapprove the practice of casting criminal jury instructions in terms of "presumptions." See *Wells,* supra, at p. 795.

We have considered the remaining enumerations with respect to the charge to the jury and find them to be without merit.

4. The evidence adduced by the State was sufficient to enable a trier of fact to find beyond a reasonable doubt that appellant committed the crime of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. We have examined the other enumerations of error and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 22, 1982 —
REHEARING DENIED JULY 8, 1982.

*Edwin S. Kemp, Jr., Virgil C. Spence,* for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney, Michael J. Bowers, Attorney General, William B. Hill, Assistant Attorney General,* for appellee.