## 39057. RUCKER v. THE STATE.

SMITH, Justice.

Willie Junior Rucker was indicted in Hall County, Georgia, in May 1982 for the murder of Arnold Pierre. A jury found Rucker guilty of murder and he was sentenced to life imprisonment. Rucker appeals, enumerating eleven errors of law. We affirm.

The body of Arnold Pierre was found in the parking lot of a restaurant in Hall County at approximately 2:30 a.m. on April 10, 1982. The victim had been shot to death. When police arrived a few minutes later in response to a telephone call, they recovered a small amount of money from Pierre's clasped hand and one white tennis shoe near his feet. Investigators from the sheriff's department photographed the body and bloody automobile tire tracks leading from the scene.

Rucker and Pierre had been drinking together earlier in the evening, and tests showed Pierre's blood to contain .39 percent alcohol by weight. An expert testified that such an amount would render most persons unconscious, but that it was not generally a fatally high blood alcohol level. Rucker's aunt testified that he and Pierre had been at her home at about 2:00 a.m., and that both were drunk. She also testified that the two had a dispute over a debt allegedly owed by Rucker to Pierre. When they left her house Pierre wore one white tennis shoe and carried the other.

Police began questioning persons who they suspected might have knowledge of the incident. They quickly concluded that Rucker was involved and located his car in front of his house at about 6:00 a.m. Police spoke to Rucker's wife at the door of the house and she admitted them in order to question Rucker, who was asleep inside. Police testified that when Rucker's wife informed him of their presence, Rucker reached under his bed for a shotgun. Rucker was quickly disarmed, then arrested and advised of his Miranda rights.

Several items of physical evidence were recovered other than the shotgun. A white tennis shoe like the one worn by Pierre was found on the floor of Rucker's car, and blood samples were taken from slacks

worn by Rucker at the time of his arrest. An expert testified that this blood was shown by enzyme tests to be of the same type as Pierre's, a type occurring in only 9.6% of the population. The expert also testified that the blood was definitely not Rucker's. In a pocket of Rucker's jacket police found a spent shotgun shell. An expert testified that it had been fired from the shotgun Rucker had reached for beneath his bed.

Following the arrest, police took Rucker from his home to the Northeast Georgia Medical Center in Gainesville, where he signed a consent form and allowed blood to be withdrawn for testing. The blood was handled normally and mailed to the state crime laboratory in Atlanta. It was received there on April 16, 1982, and analyzed for alcohol content and found to contain .21 percent alcohol by weight. The packaging and label of the blood sample were intact on arrival and showed no sign of tampering.

At the time of his arrest, Rucker stated that he had been with Pierre the previous evening but he did not remember that Pierre had been shot. Rucker made another statement at the Hall County jail about two hours later after once again being advised of his right to remain silent. He said that he had known Arnold Pierre for several months. At first he did not remember going to his aunt's with Pierre the evening before, but when police confronted him with his aunt's report that the two were at her home together he said, "if that's what she says then it must be true." He seemed to remember little else about the episode.

At trial Rucker testified that he had gotten to know Pierre when they were in jail together. Rucker's trial testimony was much more orderly and coherent than the statements given police the morning of his arrest. From the witness stand he narrated the events of the night in question. He picked up Pierre at about 1:30 a.m. in his car. Both men were very drunk. Rucker paid Pierre a twenty dollar debt he owed and they drove to the house of his aunt, Nellie Welborn. Pierre insisted that Rucker take him home, but Rucker refused. Pierre jumped on Rucker and began to beat him, but Nellie Welborn separated them and the fight ended. When Rucker prepared to leave, Pierre followed him outside, continuing to insist that Rucker give him a ride home. The argument continued as they got into the car together. Rucker remained adamant in his refusal and pulled off the road at Chico's Chicken Restaurant. Describing the scene, Rucker testified that "me and him got to scuffling. I was trying to open the door and put him out and he wasn't going to get out. I started to get out on the driver's side, and he looked back and saw the shotgun, started at it, so I beat him to it. While I was backing out the door, evidently the gun was unbalanced and it went off." Rucker contends

that Pierre tried to grab the gun from him and in the struggle, Pierre was shot accidentally.

After Pierre was shot, Rucker pulled him from the car and drove home. He arrived at about 2:45 a.m. and went to bed. Before retiring he placed the gun under the bed.

1. Appellant submits that it was error to admit as evidence a vial of blood taken from him without showing an unbroken chain of custody of the vial. Rucker's principal contention is that the vial was sent from the Northeast Georgia Medical Center in Gainesville to the Georgia State Crime Laboratory in Atlanta via the U. S. mail and that any number of persons could have tampered with the blood.

In *Patterson v. State,* 224 Ga. 197 (2) (160 SE2d 815) (1968), we considered this question and determined that where, as here, the blood sample is handled in a normal course of testing and nothing in the record raises a suspicion that the blood tested was other than that taken from the defendant, the evidence of tests on such blood is admissible. There was testimony in the present case that the vial's seal was intact on arrival in Atlanta and that there were no visible signs that it had been altered or the blood inside adulterated. A mere suspicion is insufficient to exclude the sample. The circumstances of the case need only establish reasonable assurance of the identity of the sample. This has been accomplished in the present case. Therefore, we find no merit in this enumeration.

2. Rucker argues that the state failed to establish the cause of Pierre's death; thus the evidence is insufficient to sustain the verdict. The medical examiner who performed the autopsy on Pierre testified that in his opinion the cause of death was a shotgun blast to the neck and chest. We find that there was sufficient evidence of the cause of Pierre's death to support the verdict of the jury in this case. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Appellant submits that it was error to admit into evidence over objection a photograph of the deceased showing the fatal wound, because the picture was inflammatory and prejudicial. We have many times held that photographs showing location of a wound are admissible, *Lamb v. State,* 241 Ga. 10 (2) (243 SE2d 59) (1978), where they are relevant to the issues in the case. *Edwards v. State,* 233 Ga. 625 (212 SE2d 802) (1975). This enumeration is without merit.

4. Appellant's fourth enumeration of error is not supported by argument or citation of authority and is hereby deemed abandoned pursuant to Rule 45 of the Rules of the Supreme Court of Georgia.

5. Rucker argues that the trial court erred in overruling his objection to testimony offered by a police investigator who refreshed

his memory from a transcript of statements made by Rucker. He submits that no foundation was laid for introduction of the transcript into evidence.

There is no merit in this contention. We do not find that the transcript was offered into evidence by the witness' use of it to refresh his memory. The witness did not read from the transcript, but only referred to it in order to refresh his recollection as to what Rucker said. "A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper." Ga. Code Ann. § 38-1707.

6. It was not error to overrule appellant's motion for a directed verdict. A directed verdict of acquittal is proper only when "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' . . ." Ga. Code Ann. § 27-1802. There was sufficient evidence in the present case to support the trial court's ruling on appellant's motion for a directed verdict. This enumeration of error is without merit.

7. Rucker contends that it was error to fail to give his requested charge to the jury on the law of voluntary manslaughter. We find no merit in this enumeration. The record does not reflect any action by Rucker as a result of a sudden, violent, or irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. Also, Rucker's defense was that he acted in self-defense, or that Pierre died as a result of accident. Hence no charge on voluntary manslaughter was required. See *Arnett v. State,* 245 Ga. 470 (2) (265 SE2d 771) (1980).

8. Rucker contends that the trial court erred in failing to charge the jury on the law of involuntary manslaughter in the commission of a lawful act. We find no merit in this claim of error.

"A person who causes the death of another human being by the use of a gun allegedly in self-defense will not be heard to assert that although he or she used excessive force, death was not intended and the act was lawful." *Crawford v. State,* 245 Ga. 89, 94 (263 SE2d 131) (1980). See *Appleby v. State,* 247 Ga. 587 (278 SE2d 366) (1981).

9. Rucker submits that the trial court's instructions on involuntary manslaughter in the commission of an unlawful act were confusing and misleading to the jury and constitute error. We find that the charge was proper according to Ga. Code Ann. § 26-1103 (a). Accordingly, there is no merit in this enumeration of error.

10. Appellant's tenth enumeration of error is without merit. Appellant alleges error in the trial court's recharge of the jury on the law of involuntary manslaughter in the commission of an unlawful

act. As a matter of law the recharge was neither incomplete nor insufficient. Further, appellant has waived his right to raise this issue on appeal. The court specifically asked both sides if they had any exceptions. Appellant's counsel replied, "Not really, your honor . . ." Under these circumstances, "[a]ppellant has waived his right to enumerate error by failing to respond to the court's inquiry on any objections to the charge." *White v. State,* 243 Ga. 250, 251 (253 SE2d 694) (1979).

11. Finally, appellant asserts that the trial court erred in failing to entertain an oral motion to suppress evidence illegally obtained from the home of the appellant. It is argued that only during the course of the trial did appellant become aware of certain evidence that had been seized illegally and that the oral motion was made after this discovery.

Pursuant to Ga. Code Ann. § 27-313, such motions to suppress must be presented in writing. By failing to so present his motion, Rucker waived any objection to the evidence on grounds that it was seized illegally. *Yeldell v. State,* 240 Ga. 37 (2) (239 SE2d 364) (1977); *Graves v. State,* 135 Ga. App. 921 (219 SE2d 633) (1975). Only where the movant becomes aware of the illegal seizure at such a late hour that a written motion to suppress is impossible should an oral motion to suppress and a hearing thereon be entertained. In the present case, the state did not offer any evidence illegally seized from Rucker's home. The police entered with the consent of Rucker's wife, who met them at the door and voluntarily directed them to where Rucker slept. A warrantless search is justified when permission is obtained from a third party who possesses common authority over, or other sufficient relationship to, the premises sought to be inspected. United States v. Matlock, 415 U.S. 164 (94 SC 988, 39 LE2d 242) (1974).

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 1, 1982.

*John N. Crudup,* for appellant.
*Jeff C. Wayne, District Attorney, Bruce Udolf, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.