## 46279. BURRELL v. THE STATE.
(376 SE2d 184)

CLARKE, Presiding Justice.

Christopher Omar Burrell was convicted on charges of felony murder, kidnapping with bodily harm and robbery by sudden snatching.[1] He received three life sentences plus ten years. We affirm.

On June 23, 1986, seventeen-year-old Kevin Lamar Jackson drove his blue Honda to a public library to complete his homework assignments. Three days later his body was discovered in the East Park Avenue area of Savannah, Georgia. He had been shot in the head. A few hours following the discovery of the body, Robert Roper and Christopher Burrell were seen in New Jersey in a blue Honda with a Georgia license tag. They were stopped, placed under arrest, and taken to the Franklin Township Police Department where they were confined in separate cells and interrogated separately.

At trial evidence demonstrated that Burrell owned the gun that was found in the Honda and was identified by a ballistics expert as the murder weapon. Several witnesses testified that they had seen

---

[1] The crimes were committed on June 23, 1986 and June 25, 1986. The defendant was indicted on July 16, 1986. A Chatham County jury returned a verdict of guilty on February 13, 1988. A motion for new trial was made on March 9, 1988 and was denied on July 18, 1988. Notice of appeal was filed on July 29, 1988. The transcript was docketed on September 12, 1988. The case was docketed on October 5, 1988, and was orally argued before this Court on January 9, 1989.

Burrell and Roper in the Honda during the two days after Lamar Jackson's disappearance. The library security guard testified that he saw Burrell and Roper get in the car with Jackson on the evening of his disappearance. Officers Parker and Weil testified that they overheard a conversation that Burrell and Roper had while confined at the Franklin Township Police Department. They testified that Burrell had said he was "there" during the shooting. The state also introduced recorded statements by Burrell in which he admitted to riding with Jackson, driving his Honda, changing the license tag, and driving to New Jersey. The state also introduced eyewitness testimony regarding a purse snatching incident that took place on June 25, 1986. The state contended that the purse snatching was part of the scheme the two men devised in order to travel to New Jersey.

1. Burrell contends that the testimony of officers Parker and Weil conflicts with recorded facts about the period of confinement at Franklin Township. He says that he had no opportunity to speak to Roper while confined there and that the prosecution must have known that the testimony of the officers was perjured. He asserts that introduction of this testimony violated due process.

We hold that the introduction of the officers' testimony did not offend due process. While the testimony is not entirely consistent with written reports about the interrogation times, etc., we cannot conclude that the prosecution knowingly used perjured testimony. Other evidence in the record corroborates the prosecution's contention that it was possible for Burrell and Roper to have conversed and to have that conversation overheard by the police officers. We decline to speculate as to whether the inconsistencies in the testimony were due to lapse of memory, lack of proper record-keeping, or fabrication. We also decline to leap from finding some inconsistencies in the record to the conclusion that the prosecutor knowingly used perjured testimony. It is uniquely within the province of the jury to weigh conflicting testimony under proper instructions from the Court. *Cooper v. State*, 249 Ga. 58 (287 SE2d 212) (1982).[2]

2. Burrell next alleges that the trial court abused its discretion in consolidating the trial of the felony murder/kidnapping charges with the charge of robbery by sudden snatching. He contends that the offenses should have been severed because they were not based on the same conduct and did not arise out of a continuing offense. The state maintains that the two indictments were properly joined because the

---

[2] We note that Burrell had access to the officers' written reports before trial. He was able to cross-examine the officers about the apparent inconsistencies in their statements and to point out those inconsistencies to the jury. In this way this case is distinguished from *Williams v. State*, 250 Ga. 463 (298 SE2d 492) (1983) (conviction reversed where prosecutor withheld written report that contradicted officer's trial testimony).

conduct involved was all part of a single plan to go to New Jersey. (The kidnapping/murder provided the transportation; the purse snatching provided the funding for the trip.)

The denial of a motion to sever indictments for trial is reviewed under an abuse of discretion standard. *Booker v. State*, 231 Ga. 598 (203 SE2d 194) (1974). The trial of offenses may be joined when the offenses are based on the same conduct or constitute a series of acts connected together or when the acts constitute parts of a single scheme or plan. *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975). We agree with the state that the acts committed here were all part of a single plan or scheme. We find no abuse of discretion in the joinder of the offenses.

3. Burrell asserts that the trial court erred in allowing the state to seek the death penalty because there were no aggravating circumstances. He contends that there was no evidence that Jackson did not go voluntarily with Roper and Burrell.

Contrary to Burrell's assertions on this point, we find sufficient evidence in the record from which the jury could have found aggravating circumstances to exist. Moreover, any error in this regard was harmless because the jury did not impose a death penalty and Burrell received a life sentence.

4. Burrell contends that the trial court erred in denying his motion for a directed verdict on the charges of armed robbery and kidnapping. We find, however, that the evidence presented was sufficient to support a conviction on these charges under the standard enunciated in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Under the same standard, the evidence was also sufficient to support the other charges. Id. There was no error in denying the motion for directed verdict.

5. Burrell next contends that the trial court erred in permitting Roper to testify against Burrell. Roper had given three statements prior to trial and had told a different story each time. After being convicted on all charges in a separate trial, Roper received a grant of use immunity and testified against Burrell. He gave a fourth version of the events that was inconsistent with his other statements and with some of the physical evidence. Burrell says that use of such inconsistent and unreliable testimony constitutes prosecutorial misconduct and a denial of due process.

We note that Roper admitted that he had lied during previous statements, but said that he was telling the whole truth at trial. The prosecutor had no way of knowing which version of Roper's story was true—or which parts of it were true. Roper's prior inconsistent statements were disclosed to Burrell five months before trial. He was given a full opportunity to explore the inconsistencies on cross-examination. Thus, the jury had the benefit of Roper's testimony and his previous

inconsistent statements. Nothing was kept from the jury, and the jury properly was given the opportunity to decide for itself which version was the truth, and which the fabrication. *Harrison v. State*, 257 Ga. 528 (361 SE2d 149) (1987); *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). We find no error in allowing Roper to testify.

6. Burrell says that the trial court erred in admitting the deposition testimony of Eleanor Tracey, the victim of the purse snatching incident. He claims that the deposition testimony should have been excluded because he was not given prior notice of the motion to take the witness's deposition as required by OCGA § 24-10-130. The record indicates that Burrell received a copy of the motion on the same day that it was filed and one day before the motion was granted. He did receive prior notice of the date, time and place of the deposition. He did not request a pre-deposition hearing on the propriety or necessity of taking the deposition. He attended the deposition at the state's expense. Given these facts, we find that any technical violation of the statute's notice provision was entirely harmless.

7. Finally, Burrell contends that the trial court erred in admitting evidence of his juvenile record during the sentencing phase of the trial.[3] This argument must fail as the statute specifically provides that such records may be used in dispositional proceedings after conviction of a felony. See OCGA § 15-11-38 (b). No error was committed by allowing the juvenile records to be introduced during the sentencing phase of the trial.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 8, 1989.

*Willyerd R. Collier*, for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree*, for appellee.

---

[3] We will not address Burrell's arguments regarding the use of juvenile records during the guilt/innocence phase of the trial because the record demonstrates that the juvenile records were not introduced until the sentencing phase. The record also demonstrates that none of the testimonial evidence introduced during the guilt/innocence phase of the trial was "evidence adduced in a hearing in the Juvenile Court" as described in OCGA § 15-11-38 (b).