### S90A0553. CONGDON v. THE STATE.
#### (391 SE2d 402)

WELTNER, Justice.

Edwin David Congdon shot and killed Charles David Martin with a handgun. He was indicted for murder, tried and found guilty, and sentenced to life imprisonment.[1]

Congdon became friendly with Joan Martin, and she invited him to move into the Martin family's home. There, he made bombs and experimented with explosives. Congdon killed Joan Martin's husband, David Martin, purportedly because David Martin allegedly had solicited Congdon to kill several people, including Joan Martin. Joan Martin and the Martins' two sons knew of Congdon's plans for the homicide.

1. The evidence is sufficient to permit a rational trier of fact to find Congdon guilty of malice murder beyond reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Congdon contends that the trial court erred in denying his motion to suppress evidence seized without a search warrant. He argues that, at the time of the initial search, no one was in custody or charged with the offense, the house had been secured, and there was no emergency. The initial search was a crime-scene examination search, resulting from the report to the police by Joan Martin and her son of the discovery of the victim's body in a pool of blood on the bedroom floor. Joan Martin, her son, and Congdon fully cooperated with this initial search. Congdon told the police that he experimented with explosives and that he had fired a gun that afternoon, and gave them the key to his safe, which contained ingredients for making bombs. The following day, Joan Martin and the owner of the premises signed a consent for the police to re-enter the premises.

---

[1] The homicide occurred on June 16, 1989. Congdon was indicted for murder on September 13, 1989. The jury's verdict of guilty was returned on October 16, 1989, and he was sentenced on the same date. Notice of appeal was filed on November 15, 1989, and was docketed in this court on January 24, 1990. The case was argued on March 14, 1990.

(b) In *Rucker v. State*, 250 Ga. 371, 375 (11) (297 SE2d 481) (1982), we held:

> A warrantless search is justified when permission is obtained from a third party who possesses common authority over, or other sufficient relationship to, the premises sought to be inspected. [Cit.]

The motion to suppress properly was denied.

3. (a) Congdon asserts that the showing to the jury of his videotaped interview, taken by the police, violated his right to due process because he was wearing prison clothing.

(b) As we held in *State v. Pike*, 253 Ga. 304, 307 (320 SE2d 355) (1984):

> We find that the clothing worn by the defendant did not exhibit any marking commonly associated with prison clothing so as to render the defendant's trial unfair. If the defendant's clothing . . . was recognized by any juror as being prison issue, due to the overwhelming evidence of guilt we find that the error was harmless beyond a reasonable doubt.

There was no error.

4. (a) Congdon enumerates as error the trial court's exclusion of proffered testimony of the sheriff concerning Joan Martin's post-arrest statement to the effect that she had been told by Congdon that her husband wanted her dead because she "knew too much."

(b) In *Wright v. State*, 254 Ga. 484, 487 (1) (330 SE2d 358) (1985), we stated:

> "[A] statement made to police by a conspirator, whether inculpatory or exculpatory as to the declarant, which statement incriminates the other conspirator as a party to the crime, also constitutes termination of the conspiracy. Thus, such statement by a conspirator is not made during the pendency of the criminal project and is not admissible under [OCGA § 24-3-5]." [Cit.]

The statement was inadmissible for the above reason, as well as because it was double hearsay.

5. (a) Congdon contends that the trial court erred in allowing the state to present evidence of a pre-trial statement allegedly made by him, contrary to the requirements of OCGA § 17-7-210.

(b) In *White v. State*, 253 Ga. 106, 109 (2) (317 SE2d 196) (1984), we stated:

The purpose of the statute is to inform the defendant "in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage." [Cit.]

Here, the purpose of the statute was met, as Congdon had been served with a copy of his complete statement. There is no error in having failed to provide him with a written copy of the officer's question that elicited the remark.

6. (a) Congdon, who is white, complains that the trial court erred in overruling his objection that the state had used its peremptory challenges to remove four black veniremen. Congdon's counsel stated:

[O]n apparently discriminatory grounds, [the prosecutor] has struck each and every one of the black jurors on this case. That, of course, is a violation of the laws of this country as decided by the U. S. Supreme Court in the case of *Batson v. Kentucky*. . . .

(b) In *Batson v. Kentucky*, 476 U. S. 79, 89 (106 SC 1712, 90 LE2d 69) (1986), the United States Supreme Court held:

[T]he component of the jury selection process at issue here, the State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the *Equal Protection Clause.* [Emphasis supplied.]

*Batson* continued:

To establish such a case [purposeful discrimination in selection of the petit jury], the defendant first must show that he is a member of a cognizable racial group, [cit.] and that the prosecutor has exercised peremptory challenges to remove from the venire *members of the defendant's race.* [Emphasis supplied.] [Id. p. 96.]

See also our holding in *Skipper v. State*, 257 Ga. 802, 805 (5) (364 SE2d 835) (1988), which follows *Batson*.[2]

---

[2] In *Holland v. Illinois*, ____ U. S. ____ ( ____ SC ____, ____ LE2d ____) (1990) [58 LW 4162, 4163], the United States Supreme Court held:
The threshold question is whether petitioner, who is white, has standing to raise a *Sixth Amendment* challenge to the exclusion of blacks from his jury. We hold that he does. . . . We have never suggested . . . that such a requirement of correlation between the group identification of the defendant and the group identification of excluded venire members is necessary for *Sixth* Amendment standing. . . . [Emphasis supplied.]

*Judgment affirmed. All the Justices concur, except Bell, J., who concurs in the judgment only; Hunt and Benham, JJ., who dissent.*

BENHAM, Justice, dissenting.

To the extent that Division 6 of the majority opinion denies a defendant standing to challenge the racially-motivated use of peremptory strikes unless the defendant is of the same race as the jurors, I would disagree.

Reliance by the majority on *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) for such a proposition is misplaced since I read *Batson* as not requiring group correlation as a prerequisite for mounting an Equal Protection challenge to the state's use of its peremptory challenges. Five members of the U. S. Supreme Court have clearly expressed that opinion recently in *Holland v. Illinois,* ____ U. S. ____ (____ SC ____, ____ LE2d ____) (58 USLW 4163, case no. 88-5050, decided January 22, 1990):

> . . . Like Justice Marshall, I find it essential to make clear that if the claim here were based on the Fourteenth Amendment Equal Protection Clause, it would have merit.
>
> Many of the concerns expressed in *Batson,* a case where a black defendant objected to the exclusion of black jurors, support as well an equal protection claim by a defendant whose race or ethnicity is different from the dismissed juror's. To bar the claim whenever the defendant's race is not the same as the juror's would be to concede that racial exclusion of citizens from the duty, and honor, of jury service will be tolerated, or even condoned. We cannot permit even the inference that this principle will be accepted, for it is inconsistent with the equal participation in civic life that the Fourteenth Amendment guarantees. I see no obvious reason to conclude that a defendant's race should deprive him of standing in his own trial to vindicate his own jurors' right to sit. As Justice Marshall states, *Batson* is based in large part on the right to be tried by a jury whose members are selected by non-discriminatory criteria and on the need to preserve public confidence in the jury system. These are not values shared only by those of a particular color; they are important to all criminal defendants.

---

As noted at the outset, petitioner did not seek review of the denial of his Equal Protection Clause claim. Our grant of certiorari was limited to the *Sixth* Amendment question, and the equal protection question has been neither briefed nor argued. [Emphasis supplied.] Id. p. 4166, fn. 3.

Justice Kennedy, concurring, 58 USLW 4166. Justice Marshall, in his dissent, vehemently disagreed with the opinion of the plurality (Justice Scalia, with Justices Rehnquist, White and O'Connor) that Holland did not have a Sixth Amendment claim, and, further, found that had Holland raised a *Batson* type claim under the Equal Protection Clause, the claim would have had merit. Justices Brennan and Blackmun joined Justice Marshall's dissent. Justice Stevens dissented separately, stating that

> . . . The suggestion that only defendants of the same race or ethnicity as the excluded jurors can enforce the jurors' right to equal treatment and equal respect recognized in *Batson* is itself inconsistent with the central message of the Equal Protection Clause. Id. at 4171.

It is also significant that the plurality in *Holland* expressly restricted its opinion to the Sixth Amendment claim and did not address Holland's claim under the Equal Protection Clause. Id. at 4166. Thus, it is quite possible that some members of that majority might have found merit to a claim under the Equal Protection Clause.

*Batson* seeks (1) to protect the defendant's right to a fair trial, (2) to provide jurors equal protection from discrimination, and (3) to enhance the public's confidence in the criminal justice system. While *Batson* worked toward that first goal by providing a scheme for establishing a prima facie case of discrimination against jurors of the defendant's race, *Batson* does not deny standing to a person of a different racial or ethnic group to challenge discriminatory jury challenges. To hold otherwise obstructs the accomplishment of *Batson's* other goals.

For the reasons just stated, I believe appellant had standing to raise a *Batson* challenge and that the denial of that right was error. Accordingly, I must dissent.

I am authorized to state that Justice Hunt joins in this dissent.

DECIDED MAY 17, 1990.

*Gleason, Davis & Dunn, John W. Davis, Jr., David J. Dunn, Jr.,* for appellant.

*Ralph Van Pelt, Jr.,* District Attorney, *Michael J. Bowers,* Attorney General, *Richard C. Litwin,* for appellee.