S90P1386. CHRISTENSON v. THE STATE.
(402 SE2d 41)

HUNT, Justice.

The defendant, Scott Lynn Christenson, was convicted by a jury in Harris County of the murder and armed robbery of Albert L. Oliver III. He was sentenced to death for the murder. This is his appeal.[1]

---

[1] The crime occurred on July 6, 1989. Christenson was arrested late in the evening of July 7 near Lonoke, Arkansas. The trial began on March 19, 1990, and concluded March 24. A motion for new trial was not filed, and the case was docketed in this court on July 19, 1990.

1. Christenson spent most of the afternoon of July 6, 1989 working out at a gym next door to the victim's place of employment. After his workout, he waited in front of the gym, carrying a gym bag inside of which were two handguns. His parents drove by and asked him if he needed a ride. He answered in the negative. Soon afterward, the victim exited the building next door and went to his four wheel drive Toyota utility vehicle, which contained a several-thousand-dollar, competition-quality stereo system big enough to almost completely fill the luggage area of the vehicle. Christenson was acquainted with the victim, and approached him to ask for a ride to a friend's house. Christenson's parents observed him enter the victim's truck and ride off.

Christenson directed the victim to a remote area of Harris County, and withdrew a gun from his bag. According to Christenson, a struggle for the gun ensued, the truck came to a stop, the passenger door fell open, and the two men fell out to the ground. Christenson gained control of the gun and shot the victim five times. Then he stuffed the victim's body into the passenger side of the truck, drove off the highway 100 yards, and left the body, covered with sticks and brush. He drove the victim's truck to Arkansas where he was arrested the next day for stealing gasoline. He called home to ask his father for money to post his bond. His father contacted the local police, who called Arkansas and informed them the truck was stolen and its owner missing. The defendant was interrogated in Arkansas and admitted the truck was stolen, although he denied stealing it. After the victim's body was recovered, the defendant admitted stealing the truck and shooting its owner.

The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Christenson's first four enumerations of error raise issues concerning his mental condition and his psychological evaluation. The facts and circumstances of the trial proceedings relevant to these issues are set forth in subdivision (a) below, and his legal contentions are addressed in subdivisions (b) through (e).

(a) The defendant was 18 years old at the time of the crime. He had been in nearly constant trouble with the law for several years, committing numerous burglaries and thefts. After his first adult conviction in 1988 — for first degree forgery, burglary, and stealing two motor vehicles (one of which was a Toyota truck) — the defendant was referred to the Bradley Center, a private mental health hospital, for evaluation and treatment. (All but 90 days of his sentence was

---

After the parties were given extensions of time to file their briefs, the appeal was argued orally on November 13, 1990.

probated.)

He was diagnosed as being a person of "bright-normal intelligence" who was emotionally constricted, self-absorbed and narcissistic, seductive and manipulative and who had abused alcohol. It was noted that his "condition at discharge is not improved," and that "it is doubtful that [Christenson] internalized any impulse control essential to staying out of trouble and maintaining abstinence from alcohol after discharge."

Christenson was not diagnosed as having any serious mental disorder.

Prior to this trial, the defendant filed motions seeking a "psychiatric" evaluation and seeking funds for independent psychiatric assistance. The court granted the motion for evaluation and reserved a ruling on the request for funds pending the results of the court-ordered evaluation.

Christenson was evaluated at the West Georgia Regional Hospital. A psychologist interviewed the defendant, and administered a neurological screening test, an MMPI (Minnesota Multiphasic Personality Inventory) and an IQ test. The defendant scored lower on the IQ test than he had earlier when evaluated by the Bradley Center. The psychologist attributed this to the defendant's drug usage and the resultant inattention to surroundings and environment; he was not "getting information." His IQ was still in the normal range, however. The neurological screening test did not reveal any signs of neurological damage, and neither the MMPI nor the interview revealed any signs that the defendant was suffering from a serious mental disorder.

Based upon the evidence presented to it, the court denied the defendant's motions for funds for independent psychiatric assistance. The psychologist did not testify at trial.

(b) In his second enumeration of error, the defendant contends the trial court erred by conducting "no hearing into appellant's competency." However, the defendant withdrew his plea of mental incompetence to stand trial. See OCGA § 17-7-130. It is true that the trial court might in an appropriate case be required to conduct a hearing to determine the defendant's competence to stand trial even where the defense has not moved for a hearing, but this is not such a case. Nothing before the trial court raised any question about the defendant's competence to stand trial. See Ford v. State, 255 Ga. 81 (8g) (335 SE2d 567) (1985). Compare Holloway v. State, 257 Ga. 620 (2) (361 SE2d 794) (1987) (where trial court found that defendant was incompetent to plead guilty, court should have conducted a hearing to determine defendant's competence to stand trial even in absence of defense motion for such a hearing).

(c) In his first and third enumerations, Christenson contends the

court erred by refusing to provide independent psychiatric assistance to the defense in relation to both the guilt and the sentencing phases of the trial.

> [W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

*Ake v. Oklahoma*, 470 U. S. 68, 83 (105 SC 1087, 84 LE2d 53) (1985).

Christenson presented no evidence by which the court could reasonably have inferred that the question of sanity would be a significant factor at the guilt phase of the trial. *Eddy v. State*, 255 Ga. 321 (2) (338 SE2d 262) (1986).

*Ake* also requires that a state provide a defendant with "psychiatric assistance in presenting mitigating evidence at his sentencing proceeding, where the state presents psychiatric evidence against the defendant." *Bowden v. Kemp*, 767 F2d 761, 763 (11th Cir. 1985). As noted above, the state presented no psychiatric (or expert psychological) testimony at the sentencing phase of the trial. Compare *Walker v. State*, 254 Ga. 149, 154-155 (5) (327 SE2d 475) (1985). Moreover, this is not a case in which the defendant might be entitled to psychiatric assistance at the sentencing phase even where the state does not present psychiatric testimony. See *Holloway v. State*, supra. The evidence in this case shows that the defendant is selfish and manipulative, lacks regard for the rights of others, has abused drugs and alcohol, and has committed numerous crimes. But it does not show that the defendant suffers from any serious mental disorder. It was not abuse of discretion to deny the defendant's request for court-funded independent psychiatric assistance. *Childs v. State*, 257 Ga. 243 (5) (357 SE2d 48) (1987).

(d) Preliminary to ruling on the defendant's request for independent psychiatric assistance, the defendant was sent to West Georgia Regional Hospital for a mental evaluation. Although the court's order referred to a "psychiatric" evaluation, the defendant was evaluated by a psychologist having a Ph.D. degree in clinical psychology. At the state's request, the psychologist appended to her report an addendum describing incriminating statements made by the defendant about the crime while he was being evaluated. The defendant's attorneys moved to dismiss the indictment, and suppress the addendum, contending the state was guilty of misconduct by performing a psychological evaluation instead of a psychiatric evaluation and by eliciting incriminating statements without obtaining a voluntary waiver of the defend-

ant's right not to incriminate himself.

The court's order for "psychiatric examination" put the defendant's attorneys on notice that he would be sent to the West Georgia Regional Hospital for evaluation of, among other things, his ability to distinguish right from wrong at the time of the crime. Before being evaluated, the defendant was advised that he could refuse to answer any questions about his "case, problem, or mental condition," that anything he said could be "brought out in court," and that he could stop the examination "at any time" for consultation with his attorney. The defendant signed a form stating he understood these rights.

This is not a case in which an evaluation was conducted without notice to counsel and without an advisement of rights to the defendant. The defendant's complaint that the evaluation was conducted by a psychologist rather than by a psychiatrist apparently is premised on an assumption that his communications to a psychiatrist would have been privileged while his communications to a psychologist were not. However, while there is generally a privilege concerning communications between psychiatrist and patient, see OCGA § 24-9-21, there is also a privilege concerning communications between a licensed psychologist and client. See OCGA § 43-39-16. In *either* case, where the psychiatrist or psychologist is appointed by the court to conduct a preliminary examination of the defendant, the psychiatrist or psychologist is a witness for the court, and the privilege does not apply. *Wilson v. Bonner*, 166 Ga. App. 9, 16 (303 SE2d 134) (1983). Thus, the mere fact that the defendant was evaluated by a psychologist did not, as the defendant contends, "abridge" his "privilege" for confidential communications.

Secondly, in view of the language of the order for evaluation, we cannot agree that the defendant's discussion of the facts of the case with the psychologist exceeded the scope of the purposes of the evaluation, thereby infringing on his Fifth and/or Sixth Amendment rights. See *Estelle v. Smith*, 451 U. S. 454 (101 SC 1866, 68 LE2d 359) (1981). The psychologist testified it would have been difficult if not impossible to evaluate the defendant's mental condition at the time of the crime without discussing the facts of the crime. In any event, there was no harm because the state did not offer testimony at trial about any statements made by the defendant to the psychologist. Compare *Hicks v. State*, 256 Ga. 715 (14) (352 SE2d 762) (1987).

(e) Finally, we do not agree that the state was guilty of misconduct in providing a preliminary evaluation by a psychologist to determine as a threshold matter whether the defendant's mental condition was sufficiently likely to be an issue to warrant providing court-funded independent psychiatric assistance to the defendant. See *Hance v. Kemp*, 258 Ga. 649, 657-658 (2c) (373 SE2d 184) (1988) ("A defendant must first make a 'threshold showing to the trial court' of

his need for an independent evaluation, [cit.], and a court-ordered evaluation may well establish such a need.")

When the threshold has been crossed, "the guidelines of *Ake* would not be satisfied by providing the defense with access to an examination by a mental health expert other than a psychiatrist." *Lindsey v. State*, 254 Ga. 444, 448-449 (330 SE2d 563) (1985). However, the preliminary evaluation may be conducted by a psychiatrist *or* "some other competent mental health expert." Id. at 449. Christenson's evaluation was not inadequate, and he was not misled to his detriment.

3. After the Arkansas police learned from Georgia police that Christenson was driving a stolen truck and the owner was missing, he was interrogated about the theft. Christenson admitted knowing the truck was stolen, but denied stealing the truck himself, and did not mention shooting the owner. An investigator with the GBI and three other Georgia law officers drove to Arkansas to talk to the defendant and to return him and the truck to Georgia. Shortly before they began their journey to Arkansas, the victim's body was discovered. When the defendant was interrogated by the GBI agent, the agent advised the defendant of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and told the defendant he wanted to talk to him about the theft of the truck. He did not tell the defendant the victim's body had been found. The defendant agreed to talk, and gave a statement consistent with his previous statements. At this point, the agent told Christenson that he (the agent) knew the owner of the truck was dead. The defendant then gave another statement, in which he now admitted taking the truck and shooting its owner.

Christenson contends it was error to admit this and later statements because the defendant was "deceived" about "the scope of the interrogation." He contends that because the GBI agent did not tell the defendant at the outset that the victim's body had been found and that the investigation involved possible charges of murder in addition to theft, the defendant's waiver of his *Miranda* rights was not knowing, intelligent and voluntary.

A similar situation was addressed by the U. S. Supreme Court in *Colorado v. Spring*, 479 U. S. 564 (107 SC 851, 93 LE2d 954) (1987). Spring was interrogated by agents who either told Spring that they wanted to question him specifically about firearms violations or made no statement concerning the subject matter of the investigation. Id. at 575, n. 7. In any event, the agents did not inform Spring that they were going to question him about a homicide unrelated to the firearms violations. The Court found no violation of *Miranda*, holding:

This Court's holding in *Miranda* specifically required that

the police inform a criminal suspect that he has the right to remain silent and that *anything* he says may be used against him. There is no qualification of this broad and explicit warning. The warning, as formulated in *Miranda,* conveys to a suspect the nature of his constitutional privilege and the consequences of abandoning it. Accordingly, we hold that a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege.

Id. at 577.

Christenson attempts to distinguish *Colorado v. Spring* on the ground that Spring knew the inquiry was open-ended, whereas Christenson was "misled" into believing the inquiry involved only the theft of a truck. But in this case, the murder and the theft of the truck were part of the same criminal transaction, whereas Spring was ultimately interrogated about "totally distinct criminal activity"[2] from that which was the initial subject of the interrogation. It turns the matter on its head to argue that Christenson's waiver was less voluntary than Spring's.[3]

We hold that the officer's conduct did not amount to the kind of "affirmative misrepresentation" by the police which would "invalidate a suspect's waiver of the Fifth Amendment privilege." *Colorado v. Spring,* supra at 576, n. 8.

The evidence supports the trial court's conclusion that the defendant's statements were voluntary and admissible. *Rose v. State,* 249 Ga. 628 (2) (292 SE2d 678) (1982).

4. The trial court's rulings on the qualifications of prospective jurors were "within the deference due the trial judge's determination." *Jefferson v. State,* 256 Ga. 821, 824 (2) (353 SE2d 468) (1987).

5. Christenson, who is white, raises for the first time on appeal an

---

[2] See fn. 3.

[3] "It is one thing to conclude, as the courts have, that a defendant can effectively waive his rights and decide to talk to the police about a certain event, e.g., a robbery or a beating, without knowing certain facts (more likely, that the victim is dead) which bear upon how much difficulty he is getting into by talking. It is quite another to conclude that a waiver obtained in the context of an investigation known by the defendant to involve certain offenses should be construed as 'open-ended' and thus equally applicable to some totally distinct criminal activity.

"But the Supreme Court concluded in *Colorado v. Spring* that even in the latter situation there is no affirmative obligation on the police to advise the defendant about the crime concerning which they wish to interrogate—even when the circumstances rather strongly suggest the desired questioning will be about a matter quite different from that later encompassed by the interrogation." LaFave and Israel, Criminal Procedure, Vol. I, ch. 6, § 6.8 at 523 and pocket part at 103 (West Pub. Co. 1984). (Footnotes omitted.)

issue of the prosecutor's exercise of peremptory challenges against black prospective jurors. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Pretermitting any question of this defendant's standing to raise the issue,[4] he may not raise it for the first time on appeal. See *Spencer v. State*, 260 Ga. 640 (1e) (398 SE2d 179) (1990).

6. The court did not err by refusing to charge the jury on voluntary manslaughter. *Horton v. State*, 249 Ga. 871 (1) (295 SE2d 281) (1982).

7. In his 9th, 10th and 11th enumerations of error, Christenson complains about the prosecutor's closing argument.

(a) The defendant's attorney argued first at the guilt phase of the trial. As to the defendant's pre-trial statements, he argued that the defendant had "sent . . . a message" to anyone that might later read the statements that they had to be "ludicrous." The attorney discussed some of the "peripheral" details of the defendant's statements including his travel itinerary between the time of the crime and the arrest, and argued it was obvious that, if the defendant had gone everywhere he claimed he had gone, he traveled 883 miles in seven hours. The defendant's attorney argued only a "fool or a police officer with tunnel vision" could believe the defendant's statements; that the defendant had given the police what they wanted to hear about the main events but filled the statements with incorrect details so a jury would know that those admissions were untrue.

The district attorney responded, in his argument:

Suppose he didn't trust any of those folks, then why say those things, then why say those words. He's sophisticated enough and subtle enough to send you a message about trip to A to B to C to D to E to F. If he's subtle enough to do that, why isn't he subtle enough to say, I'm not talking to you. Why isn't he subtle enough to say, I didn't do it!

Suppose, suppose, suppose they're right and you can't trust any of these people. After he was arrested, he called his daddy. Daddy, let me tell you. We don't hear that.

He gets back to this area where he's got an uncle. . . . Uncle . . . , let me tell you what those police did to me. Now, I want to tell you the truth. Have you heard that? No. Absolutely, positively not.

---

[4] See *Congdon v. State*, 260 Ga. 173 (6) (391 SE2d 402) (1990) to which the author of this opinion dissented.

The defendant timely objected to this argument, and contends the prosecutor improperly commented about the defendant's failure to testify, and infringed on his Fifth Amendment right not to incriminate himself. See *Marlow v. State*, 152 Ga. App. 218 (1) (262 SE2d 460) (1979).

In *Ranger v. State*, 249 Ga. 315, 319 (290 SE2d 63) (1982), we adopted this test (quoting *United States v. Rochan*, 563 F2d 1246, 1249 (5th Cir. 1977)):

> To reverse for improper comment by the prosecutor, we must find one of two things: that "the prosecutor's manifest intention was to comment upon the accused's failure to testify" or that the remark was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Citations omitted.)

The prosecutor's "manifest intention" and the argument's natural and necessary impact on the jury must be determined by reference to the context in which it was made.

The prosecutor's argument in this case clearly was a response to the defendant's argument about the defendant's *pre-trial statements*. There was no manifest intention to comment upon Christenson's failure to testify, nor would the jury have "naturally and necessarily" taken it to be such comment. Since the defendant did not exercise his right to remain silent during his custodial interrogation, the prosecutor was entitled to comment on his pre-trial omissions. *Bertolotti v. Dugger*, 883 F2d 1503, 1523-1524 (11th Cir. 1989). Compare *Hill v. State*, 250 Ga. 277 (4) (295 SE2d 518) (1982).

(b) At the sentencing phase, the prosecutor drew a similar objection:

> [Mr. Pullen for the state]: [I]t is so unusual to have nobody even say I'm sorry! And remember that phase of the trial that we completed. When that defendant sat right there where he is right now and never moved. Never shed a tear. Never got misty eyed during the course —

> MR. BUNN [for the defendant]: Your Honor. Your Honor.

> THE COURT: Just a moment.

> MR. BUNN: I object to his commenting on the fact that the defendant has not testified in this case and we move for a mistrial at this time.

MR. PULLEN: Your Honor, I don't see how any rational individual can take what I said as a comment on his failure to testify. I was commenting on the fact that he has sat over there fish-eyed during this whole trial.

THE COURT: All right, with that explanation proceed.

MR. PULLEN: Totally without repentance. Totally without remorse and sat there and put his family through the ordeal that they've had to go through. . . .

The U. S. Supreme Court has held that a criminal defendant may not be compelled to testify at the sentencing phase of a death penalty trial. *Estelle v. Smith*, supra at 462-463. We will assume that comment on the defendant's failure to testify would be just as inappropriate at the penalty phase as it is in respect to the guilt phase of a death penalty trial.[5] Contrary to the defendant's contentions, it is not "manifest" that the prosecutor intended to comment on Christenson's failure to testify at the sentencing phase, nor would the jury have "naturally and necessarily" interpreted it as such a comment.

The remaining comments referred to the defendant's courtroom demeanor. Comments based on courtroom observation of a defendant's demeanor do not infringe on the defendant's Fifth Amendment rights. Cf. *Estelle v. Smith*, supra at 463-464. At the sentencing phase, "[s]ound policy reasons exist for allowing a jury to consider the courtroom demeanor of a defendant." *United States v. Schuler*, 813 F2d 978, 983 (9th Cir. 1987) (Hall, J., dissenting).[6] As we pointed out in *Isaacs v. State*, 259 Ga. 717, 723 (9) (386 SE2d 316) (1989), "the defendant's remorse or lack thereof is a permissible area of inquiry during sentencing." The prosecutor in this case was entitled to comment about the defendant's apparent lack of remorse during the presentation of evidence concerning the death of the victim.

(c) We do not find that the prosecutor's limited references to the victim's family violated the proscription on victim-impact evidence. See *Booth v. Maryland*, 482 U. S. 496 (107 SC 2529, 96 LE2d 440) (1987).

(d) The prosecutor did not argue impermissibly by explaining "retribution" as "[w]hat we learned in Sunday School as an 'eye for

---

[5] But see cf. *Roberts v. United States*, 445 U. S. 552 (100 SC 1358, 63 LE2d 622) (1980); *United States v. Perez-Franco*, 873 F2d 455 (1st Cir. 1989); *Estelle v. Smith*, supra at 469 (n. 13).

[6] Judge Hall notes in her dissent at 983 that "in *Reagan v. United States*, 157 U. S. 301 (15 SC 610, 39 LE 709) (1895), the Supreme Court quoted with approval instructions that specifically advised a jury to consider the defendant's 'demeanor and conduct upon the witness stand *and during the trial*.' Id. at 308, 15 SC at 613 (emphasis added)."

an eye and a tooth for a tooth.' " *Walker v. State*, 254 Ga. 149, 159 (14) (327 SE2d 475) (1985); *Conner v. State*, 251 Ga. 113 (6) (303 SE2d 266) (1983).

(e) In addition to the foregoing, Christenson complains about portions of the prosecutor's closing argument not objected to at trial. Absent timely objection, we find no reversible error. *Walker v. State*, supra at 158.

8. Pursuant to OCGA § 17-10-2, the state provided pre-trial notice that it would offer as evidence in aggravation a prior conviction for first degree forgery, burglary and two thefts of motor vehicles. The state offered no other evidence at its case-in-chief during the sentencing phase of the trial. However, in its cross-examination of the defendant's mitigation witnesses, the state asked numerous questions about other offenses ostensibly committed by the defendant, totaling, according to the prosecutor's calculation, 23 reported felonies. That is, aside from the four felony offenses offered in aggravation, and the two for which he had just been convicted, the state asked numerous questions about 17 alleged prior felony crimes committed by this defendant, most, apparently, while he was still a juvenile. As to the great majority of these offenses, no evidence was introduced to prove their commission by the defendant. Nevertheless, the state relied on the defendant's alleged extensive prior record — most of which had no evidentiary basis — in its argument urging the jury to impose a death sentence.[7]

(a) The defendant argues the notice provisions of OCGA § 17-10-2 were violated. However: "Since the state was not introducing evidence in aggravation, but cross-examining the witness to determine the basis of the witness' testimony, OCGA § 17-10-2 was not applicable." *Clark v. State*, 186 Ga. App. 106, 110 (6) (366 SE2d 361) (1988); affirmed in *State v. Clark*, 258 Ga. 464 (369 SE2d 900) (1988).

(b) The state argues this was rebuttal evidence admissible without specific prior notice that it would be offered in aggravation. See, e.g., *Buttrum v. State*, 249 Ga. 652 (9) (293 SE2d 334) (1982). However, assuming it could have rebutted defense testimony, see *Wright v. State*, 255 Ga. 109 (7) (335 SE2d 857) (1985), this extensive prior record was not offered in evidence. See *Burrell v. State*, 258 Ga. 841 (7) (376 SE2d 184) (1989) (juvenile records of adjudication admissible in aggravation of sentence).

(c) Where the defendant objects to the district attorney's questions to the defendant's character witnesses about offenses of which the state has not given notice under OCGA § 17-10-2, the district attorney is required to demonstrate that his questions were asked in

---

[7] The defendant interposed no objection to this line of argument.

good faith, and based on reliable information that can be supported by admissible evidence. *State v. Clark*, 258 Ga., supra. See also *Nassar v. State*, 253 Ga. 35, 36 (4) (315 SE2d 903) (1984). The defendant objected to the district attorney's questions to the defendant's character witnesses about non-noticed offenses and, although the prosecutor claimed his questions were based on "reliable" sources, he did not offer to prove them, either with "certified copies of [records] or with witnesses to testify concerning these acts." *Clark v. State*, supra, 186 Ga. App. at 110. The defendant's death sentence is remanded to the trial court for a determination of whether the district attorney can support his questions to the defendant's character witnesses as required.

9. The state also offered in evidence at the sentencing phase a custodial statement made by the defendant after his arrest for the theft of a Toyota truck (one of the crimes offered in aggravation by the state in its case-in-chief). The defendant asked for a *Jackson-Denno* hearing to determine whether the statement was voluntary and admissible and whether the defendant had been informed of and had waived his *Miranda* rights. The state contended no such determination was necessary because the defendant had pled guilty to the theft of the truck and had thereby waived any objection to the interrogation. The trial court agreed. We disagree. By his plea of guilty, the defendant undoubtedly waived any such issue concerning his conviction. See LaFave and Israel, Criminal Procedure, ch. 20, § 20.6 (a) (Rights Waived or Forfeited by Plea) (Vol. II, West 1984). But we do not find that he "waived the use of an inadmissible statement at the sentencing phase of [this death-penalty] trial." *Hatcher v. State*, 259 Ga. 274, 277 (2) (379 SE2d 775) (1989). The defendant having objected to its admission in evidence and having requested a hearing on its admissibility, the trial court should have provided one. See also cf. *Estelle v. Smith*, supra (Supreme Court rejected state's argument that defendant's non-warned pre-trial statement was admissible at penalty phase because used only to fix punishment, not establish guilt).

A plea of guilty ordinarily renders harmless the admission into evidence of facts regarding the crime or crimes charged which are included in the guilty plea. However, we cannot say the admission into evidence of facts beyond the scope of the guilty plea is harmless. The defendant's statement was not merely cumulative to his guilty plea; the defendant stated to his interrogator that he would have killed to steal the truck if it had been necessary. (It was not necessary in that case because the keys were left in it.) Accordingly, the death sentence is remanded to the trial court for a *Jackson-Denno* hearing to determine whether the statement was voluntary and admissible and whether the defendant had been informed of and had waived his *Mi-*

*randa* rights.

10. The evidence supports the jury's finding that the offense of murder was committed during the commission of the offense of armed robbery. OCGA §§ 17-10-30 (b) (2); 17-10-35 (c) (2). We do not agree with the defendant's contention that the case is not aggravated enough to warrant a death sentence.

11. The court's instructions on the § b (2) aggravating circumstance were not erroneous.

12. For reasons stated above, the conviction is affirmed as to the issue of guilt, but the death sentence is remanded to the trial court, pursuant to Division 8 of the opinion, for a determination of whether the district attorney's questions to the defendant's character witnesses are based on reliable information supported by admissible evidence. If the trial court determines they are not, the trial court shall hold a new sentencing hearing. The death sentence is also remanded pursuant to Division 9 for a *Jackson-Denno* hearing, and appropriate findings of fact and conclusions of law. After the conclusion of the proceedings on remand, the case shall be returned to this court for review of the proceedings on remand and for the sentence review, unless the result of such proceedings obviates the need for further appellate review.

*Judgment affirmed in part, remanded in part. All the Justices concur, except Benham, J., who dissents as to Divisions 7 (b) and 8 (c), and would reverse the death sentence.*

BENHAM, Justice, dissenting in part.

I concur in the affirmance of the conviction. However, I dissent to Division 7 (b) and to Division 8 (c) and would hold that Christenson's death sentence must be reversed.

1. In Division 7 (b), the majority concludes that the prosecutor merely commented on the defendant's courtroom demeanor when he told the jury that it was so "unusual" that "nobody even [said] I'm sorry" and to "remember" that the "defendant [had] sat right there and never moved." The majority interprets this to be a comment on the defendant's "demeanor." But the test for reversing for improper comment on the defendant's failure to testify is not how the comment might be construed most favorably to the state, but, as the majority notes in Division 7 (a), whether the prosecutor's "manifest intention" was to comment on the defendant's failure to testify or whether the jury would "naturally and necessarily" take it to be such a comment. Even if it was not the prosecutor's "manifest intention" to comment on the defendant's failure to testify, the argument is improper if the jury would "naturally and necessarily" interpret it as such comment.

I believe that a jury would naturally and necessarily have interpreted the prosecutor's observation that it was so "unusual" in this

kind of case that nobody said "I'm sorry" and his exhortation to the jury to remember that Christenson had "sat right there and never moved" as a comment on the defendant's failure to testify.[8]

2. In Division 8 (c), the majority holds the trial court erred by allowing the prosecutor to question defense character witnesses about numerous crimes allegedly committed by this defendant without requiring the prosecutor to prove that his questions were asked in good faith and based on reliable information. I agree with the majority that the state's cross-examination was error, but I cannot agree that a remand for a belated demonstration of reliability is sufficient to cure the error. A remand would not address a fundamental flaw in this sentencing trial: Not only was considerable prejudicial information having no evidentiary basis presented to this jury, but, in his closing argument, the prosecutor alluded to this information as if it was evidence and urged the jury to impose a death sentence based, in part, on this alleged extensive prior record.

This court is required to determine whether the death sentence "was imposed under the influence of passion, prejudice, or any other arbitrary factor." OCGA § 17-10-35 (c) (1). Where the jury has been exposed to highly prejudicial non-evidence and is asked to impose a death sentence based on that non-evidence, I can only conclude that the death sentence was imposed "under the influence of . . . arbitrary factor[s]," and therefore may not stand.

I would affirm the conviction, reverse the sentence, and remand for a retrial of the sentencing phase.

DECIDED MARCH 15, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

James A. Messner, Richard A. Bunn, Fulbright & Jaworski, Frederick Robinson, Stephen M. McNabb, Michael G. McGovern, for appellant.

Douglas C. Pullen, District Attorney, Charles E. Bagley, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Leonora Grant, for appellee.

---

[8] Moreover, I note that at least one court has held that it is improper for a prosecutor to comment about the demeanor of a non-testifying defendant. *United States v. Schuler*, 813 F2d 978 (9th Cir. 1987).