FINAL COPY
294 Ga. 383

S13A1335. FOSTER v. THE STATE.

MELTON, Justice.

Following a jury trial, Dasjwan Foster was found guilty of malice murder and aggravated assault.[1] Foster now appeals, contending that the trial court committed numerous evidentiary errors and handed down an improper sentence. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on September 22, 2010, a fight broke out at an apartment complex in Macon, Georgia. Betty Hayes, who was involved in the fight, telephoned her niece, Joelissa Johnson, and requested assistance. Johnson and her friend, Brianna Curry, arrived at the apartments, confronted some individuals, and then left in

---

[1] On February 15, 2011, Foster, along with co-defendants Brianna Curry and Joelissa Johnson, was indicted for the malice murder of Terrilyn Williams and the aggravated assault of Ryneisha Rainey. Following a jury trial, Foster was found guilty of both crimes, and he was sentenced to life without parole for murder with twenty concurrent years for aggravated assault. On October 11, 2011, Foster filed a motion for new trial, which he amended on July 8, 2012. After the motion was denied on February 15, 2013, Foster timely filed a notice of appeal. His case was docketed to the September 2013 term of this Court and submitted for decision on the briefs.

Johnson's car. Johnson later returned with Curry and Foster, who was seventeen years old. At that time, some apartment dwellers who had not been involved in the prior fights were standing outside. Johnson handed a gun to Foster, and, after firing a warning shot into the air, Foster fired at the group of people he did not know. Terrilyn Williams was killed, and Ryneisha Rainey was shot in the arm and wrist. Thereafter, Foster, Johnson, and Curry were arrested, and, while in jail, Foster sent Johnson a letter. In the letter, Foster instructed Johnson to keep quiet about the shooting and told her that the police did not have a case against him. Both Johnson and Curry, Foster's co-defendants, stated that Foster was the shooter. Four other witnesses at the scene identified Foster as well.

This evidence was sufficient to enable the jury to find Foster guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Foster contends that the trial court erred by failing to grant his motion for a mistrial after Tonya Byron, one of the State's witnesses, began crying during her testimony. Apparently, Byron thought of Williams as a member of her family and became emotional when talking about the murder.

The appropriate response to a witness' show of emotion is a matter

addressed to the trial court's discretion. The emotional outburst in this case consisted of the witness crying. Such emotions are reasonably expected by one who is a close friend of a murder victim. The record does not contain any "evidence that [Byron] became hysterical or made any prejudicial comments. [Cit.]" Brannan v. State, 275 Ga. 70, 80-81 (12) (561 SE2d 414) (2002). Under these circumstances, the trial court did not abuse its discretion by denying the motion for mistrial. [Id.] at 80 (12).

(Citations and punctuation omitted.) Williams v. State, 276 Ga. 384, 385 (2) (578 SE2d 858) (2003).

3. Foster argues that the trial court erred by admitting into evidence the incriminating letter written by Foster to Johnson because it was not properly authenticated. "The genuineness of a writing[, however,] may be proved by circumstantial evidence." (Citations omitted.) Arevalo v. State, 275 Ga. 392, 395 (5) (567 SE2d 303) (2002). Trial testimony showed that the letter in question was signed with the name, "Trae Tha Truth," an alias Foster previously used. The contents of the letter referred to Johnson's relatives and friends, known by both Foster and Johnson. The letter also discussed the associated charges, and it included Foster's assigned jail cell number. Johnson testified that she received the letter on her meal tray, and that she knew it was from Foster based on the names and the content of the letter. "Under all of these circumstances, it is very

3

unlikely that anyone other than [Foster] had written the letter. Accordingly, the circumstances were sufficient to make a prima facie showing of authenticity." (Citations and punctuation omitted.) Id. at 395-396 (5).

4. Foster contends that the trial court erred by allowing Johnson to testify that the phrase "hold it down" contained in the letter to her from Foster meant "keep quiet." We disagree. "A lay witness may relate his or her opinion as to the existence of any fact so long as the opinion is based upon the person's own experiences and observations, and so long as the matter referred to is within the scope of the average juror's knowledge." (Citation omitted.) Harris v. State, 279 Ga. 304, 306 (1) (612 SE2d 789) (2005). At the time she was being questioned about the letter, Johnson indicated that she had heard the phrase before and that, in her experience, it meant to stay quiet about a matter. There was no error.

5. Foster contends that the trial court erred by allowing the letter to go out with the jury, thereby constituting a "continuing witness" violation. This contention is meritless. The letter was

> not written testimony and did not derive [its] evidentiary value solely from the credibility of [its] maker[]. Instead, [it was] original documentary evidence, and [was] properly allowed to go out with the jury. See Bollinger v. State, 272 Ga. App. 688, 692 (2) (613 SE2d 209) (2005) (letters not written testimony and thus continuing

4

witness rule not violated).

(Citation omitted.) <u>Davis v. State</u>, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009).

6. Foster maintains that the trial court erred by admitting evidence of threats received by Gleshera Townsend, a witness, and failing to grant a mistrial after this evidence was introduced. Again, the trial court did not err.

> The trial court has discretion to admit evidence of a threat to a witness that is not connected to the defendant if the evidence is relevant to explain the witness's "reluctant conduct on the witness stand." <u>Coleman v. State</u>, 278 Ga. 486, 488 (604 SE2d 151) (2004). See also <u>United States v. Doddles</u>, 539 F3d 1291, 1296 (10th Cir. 2008) (holding that a witness's testimony that he feared retaliation from members of the defendant's gang was admissible to explain his inconsistent statements). Compare <u>Kell v. State</u>, 280 Ga. 669, 671-672 (631 SE2d 679) (2006) (holding such evidence inadmissible where the threat was not connected to the defendant or to any influence on the witness's testimony).

<u>Williams v. State</u>, 290 Ga. 533, 539 (2) (d) (722 SE2d 847) (2012). Here, Townsend, who is Johnson's mother, testified that she had received threats from someone other than the defendant. The evidence of threats against Townsend, which the prosecutor did not connect to Foster, was admissible to explain Townsend's reluctance on the witness stand. Id.

7. Foster contends that the trial court erred by refusing to give his requested charge on motive, arguing specifically that Johnson and Curry may

have had some desire to cooperate with the State and the jury should have been informed of potential bias. A review of the charge as a whole undercuts this argument.

> During both the preliminary charge and the final charge, the trial court thoroughly instructed the jury that it was the arbiter of each witness's credibility and that it should give consideration to each witness's interest or lack thereof in the outcome of the case. This charge adequately covered the possible motive, interest, or bias of the State's witnesses.

(Citation and punctuation omitted.) Lee v. State, 281 Ga. 776, 777-778 (3) (642 SE2d 835) (2007).

8. Foster argues that the trial court erred by refusing to give his requested charge regarding the manner in which the jury should consider opinion evidence, specifically with regard to testimony by investigating police officers. Again, the charge as a whole negates this contention, as the trial court fully instructed the jury on the nature of opinion evidence and the manner in which to consider it.

9. Foster contends that the trial court erred by refusing to give his requested charge on voluntary manslaughter. A person commits voluntary manslaughter when he causes the death of another "if he acts solely as the result

6

of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). There was, however, no evidence of a sudden, irresistible passion or provocation. To the contrary, the record shows that, in the absence of any serious provocation at all, Foster shot into an unsuspecting crowd of strangers. There was not even a slight factual basis to support a finding of voluntary manslaughter, and, as a result, a charge on voluntary manslaughter was unwarranted and properly denied. See Campbell v. State, 292 Ga. 766, 767 (2) (740 SE2d 115) (2013).

10. Foster contends that the trial court erred by sentencing him to life without parole pursuant to OCGA §§ 16-5-1 and 17-10-16.1, maintaining that the latter statute was applied to him in an ex post facto manner. With an effective date of April 29, 2009, OCGA § 16-5-1 was amended to make life without parole an available sentence in all murder cases. As such, life without parole was an available sentencing option for Foster, who murdered Williams on September 22, 2010. After the murder, the Legislature passed OCGA § 17-10-16.1, which provides that "[a] person may be sentenced to life without parole without the prosecutor seeking the death penalty under the laws of this

7

state." This codified a provision that had been adopted by the Legislature in 2009, but not codified. Ga. Laws 2009, p. 223, § 10. Contrary to Foster's characterization, OCGA § 17-10-16.1 did not originate the option of a sentence of life without parole in a murder case, such that its application to Foster was ex post facto. There was no error. See Mathis v. State, 293 Ga. 35 (5) (743 SE2d 393) (2013).

11. Finally, Foster argues that, because he was a minor, the sentence of life without parole was cruel and unusual punishment. *Mandatory* life without parole sentences for juveniles are unconstitutional and violate the Eighth Amendment. Miller v. Alabama, 567 U. S. __ (132 SCt 2455, 183 LE2d 407) (2012). OCGA § 16-5-1 (d) does not mandate life without parole, but instead gives the sentencing court discretion over the penalty. Accordingly, Foster's contention lacks merit.

Judgment affirmed. All the Justices concur.


Decided January 21, 2014.

Murder. Bibb Superior Court. Before Judge Ennis.

Robert M. Bearden, Jr., for appellant.

8

K. David Cooke, Jr., District Attorney, Nancy S. Malcor, Shelley T. Milton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Bikoff, Assistant Attorney General, for appellee.