Thompson, Chief Justice.
A jury found appellant Veasa Bun guilty of malice murder and other crimes in connection with the shooting death of Sheriff’s Deputy Richard Daly.[1] Bun, who was seventeen years old at the time the crimes were committed, was sentenced to life without parole plus an additional seventy years of imprisonment. His motion for new trial *550 asserting numerous grounds of error was denied, and he appeals, arguing that his sentence constitutes cruel and unusual punishment under both the federal and Georgia Constitutions and that his trial counsel provided ineffective assistance. For the reasons that follow, we affirm.
1. The evidence presented at trial, considered in the light most favorable to the verdict, shows that on July 20,2011, Deputy Daly and several other law enforcement officers pulled over a vehicle in which Bun was a passenger. Bun had been identified as a passenger in the vehicle by an officer who knew there was an outstanding warrant for Bun’s arrest in connection with a previous robbery and aggravated assault. As Daly and the other officers approached the stopped vehicle, Bun grabbed and cocked a gun, stepped out of the car, and fatally shot Daly twice in the abdomen. Bun then shot at other officers as he fled into the nearby woods.
We conclude the evidence adduced at trial was sufficient to authorize a rational jury to find Bun guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).
2. Relying on the United States Supreme Court’s decisions in Roper v. Simmons, 543 U. S. 551 (125 SCt 1183, 161 LE2d 1) (2005), Graham v. Florida, 560 U. S. 48 (130 SCt 2011, 176 LE2d 825) (2010), and Miller v. Alabama, 567 U. S. (132 SCt 2455, 183 LE2d 407) (2012),[2] Bun argues that imposition of a sentence of life without parole on a juvenile defendant in a homicide case constitutes cruel and unusual punishment in violation of the federal and state constitutions.[3] The identical issue was raised and decided adversely to Bun in Foster v. State, 294 Ga. 383, 387 (11) (754 SE2d 33) (2014), based on this Court’s recognition that OCGA § 16-5-1 does not under any *551 circumstance mandate life without parole but gives the sentencing court discretion over the sentence to be imposed after consideration of all the circumstances in a given case, including the age of the offender and the mitigating qualities that accompany youth. See former OCGA § 16-5-1 (d)[4] (“A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life”). See also Miller, supra, 132 SCt at 2469. Other courts, including the Eleventh Circuit Court of Appeals and numerous state courts, have similarly concluded that the Supreme Court’s decisions in Roper, Graham, and Miller do not stand for or demand the conclusion that a sentencing court is categorically barred from sentencing juveniles in a homicide case to life imprisonment without the possibility of parole. See Loggins v. Thomas, 654 F3d 1204, 1221-1222 (11th Cir. 2011) and cases cited therein (neither Roper nor Graham held or said that the Constitution bars a life without parole sentence for a juvenile convicted of murder; “[i]f anything, Roper implies that it is permissible”); Commonwealth of Pennsylvania v. Batts, 620 Pa. 115, 131-132 (66 A3d 286) (Pa. 2013) (Miller did not bar imposition of a life-without-parole sentence on a juvenile categorically); State v. Allen, 289 Conn. 550, 585 (958 A2d 1214) (Conn. 2008) (“The courts are in consensus, however, that the United States Supreme Court clearly has signaled that [a life without parole] sentence [for a juvenile offender] does not violate the eighth amendment”); Wallace v. State, 956 A2d 630, 641 (Del. 2008) (“the United States Supreme Court, in Roper, would not have recognized a sentence of life without parole as an acceptable alternative to death as a punishment for juveniles who commit [murder], if such a sentence would violate the Eighth Amendment”); State v. Pierce, 223 Ariz. 570, 571-572 (225 P3d 1146) (Ariz. App. 2010) (the Supreme Court in Roper “expressly intimated that a natural life sentence for a juvenile who committed murder is not unconstitutionally cruel and unusual”). See also State v. Long, 138 Ohio St.3d 478 (II) (C) (8 NE3d 890) (Ohio 2014); Conley v. State, 972 NE2d 864 (IV) (Ind. 2012); State v. Golka, 281 Neb. 360, 382 (796 NW2d 198) (Neb. 2011); State v. Andrews, 329 SW2d 369, 376-377 (Mo. 2010). We, therefore, reject Bun’s invitation to extend the holdings oí Roper, Graham, and Miller and affirm the trial court’s denial of his motion for new trial on this ground.[5]
*552 3. Bun also claims he was entitled to a new trial because his trial counsel rendered ineffective assistance by failing to object to the testimony of Tracy Graham-Lawson, a former juvenile judge who had presided over a number of Bun’s juvenile cases but is no longer acting in any judicial capacity. To establish ineffective assistance of counsel, Bun must show both that trial counsel’s performance was professionally deficient and that but for the deficient performance there is a reasonable probability that the result of the proceedings would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (689 SE2d 280) (2010). Acourt considering a claim of ineffective assistance must apply a strong presumption that counsel’s representation was within the wide range of reasonable professional assistance. Strickland, supra, 466 U. S. at 689. “If there is no showing of deficient performance, we need not address the prejudice issue.” Romer v. State, 293 Ga. 339, 344 (745 SE2d 637) (2013).
Lawson’s testimony, offered during the sentencing phase of trial, related to factual information from Bun’s juvenile court records, including information regarding Bun’s delinquency dispositions, involvement in gang activity, poor academic record, psychological disorders, and drug use. She also offered her view that Bun’s juvenile record indicated he was a threat to society and that he should receive a sentence of life without parole. On appeal, Bun claims counsel should have objected to Lawson’s testimony because it was prohibited under Canon 2 of the Georgia Code of Judicial Conduct which states that judges “shall avoid impropriety and the appearance of impropriety in all their activities” and “should not testify voluntarily as ... character witness [es].” Canon 2 A. and 2 B., Georgia Code of Judicial Conduct.
Bun’s reliance on the Code of Judicial Conduct as the ground for exclusion of Lawson’s testimony is misplaced. The Code of Judicial Conduct, which is intended “to provide a structure for regulating [judicial] conduct through disciplinary agencies,” is limited in its application to officers “of a judicial system performing judicial functions” and, in some circumstances, to judicial candidates. See the Georgia Code of Judicial Conduct, Preamble, and Application of the Code of Judicial Conduct (“Anyone . . . who is an officer of a judicial system performing judicial functions ... is a judge for the purpose of this Code.”). Thus, even assuming the Code of Judicial Conduct could be asserted in a criminal proceeding as a basis for the exclusion of *553 evidence, the Code did not apply to Lawson because she was not a judge or judicial candidate at the time her testimony was given. Counsel’s failure to raise a meritless objection did not amount to ineffective assistance.[6] See Oliphant v. State, 295 Ga. 597, 600 (2) (a) (759 SE2d 821) (2014).

Judgment affirmed.

All the Justices concur, except Benham and Hunstein, JJ., who dissent.

 Bun was indicted on November 2, 2011, by a Clayton County grand jury on charges of malice murder, felony murder, four counts of aggravated assault on a peace officer, five counts of obstruction of an officer, five counts of possession of a firearm during the commission of a felony, two counts of aggravated assault, and one count of theft by receiving a stolen firearm. A jury found him guilty of all counts except one count of aggravated assault on a peace officer, one count of obstruction of a police officer, one count of aggravated assault, and one count of possession of a firearm during the commission of a felony. The felony murder conviction was vacated by operation of law, and one of the aggravated assault verdicts merged into the malice murder verdict. On August 9,2012, the trial court sentenced Bun to serve life in prison without parole for the malice murder conviction and an additional seventy years for the remaining convictions. Bun filed a motion for new trial on August 10, 2012, which was denied on March 7, 2014, following a hearing. Bun’s notice of appeal was filed on March 17, 2014. The case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

 In Roper, the United States Supreme Court held that a sentence of death imposed against a juvenile offender is disproportionate to his or her “diminished culpability” and violates the United States Constitution’s ban on cruel and unusual punishment. U. S. Const. Amend. VIII. Five years later, in Graham, supra, 560 U. S. at 79, the Supreme Court held that a sentence of life without parole cannot be constitutionally imposed upon a juvenile convicted of a non-homicide crime. In reaching that conclusion, the Court weighed the extreme severity of the punishment of life without parole against the “limited culpability of juvenile ... offenders.” Id. at 74. The Supreme Court extended its ruling in Graham when, in Miller, it held invalid a law imposing a mandatory sentence of life without parole in juvenile homicide cases. The Court reasoned that “making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence . . . poses too great a risk of disproportionate punishment.” 132 SCt at 2469. The Supreme Court emphasized, however, that it was not creating a categorical bar prohibiting a sentence of life without parole in juvenile homicide cases and was not “foreclosfing] a sentencer’s ability to make that judgment in homicide cases.” Id.

 Prior to sentencing, Bun filed a motion to declare the imposition of a sentence of life without parole unconstitutional because of his status as a juvenile offender. The trial court denied Bun’s motion after conducting a pre-sentence hearing.

 This provision is now codified at OCGA § 16-5-1 (e) (1).

 Although Bun has not asserted an as applied cruel and unusual punishment claim, the trial court’s order and sentencing transcript make clear that the trial court considered Bun’s youth and its accompanying attributes in making its sentencing decision and whatever the *552 significance attributed to Bun’s youth, the trial court found it was outweighed by the severity of his crimes, his criminal history, and his lack of remorse.

 We note that trial counsel testified at the motion for new trial hearing that he made a conscious decision not to object to Lawson’s testimony because he believed the testimony was admissible and he did not want the judge to think he was “hiding anything.” Under Georgia law, a defendant’s juvenile court records can be considered by a trial court in the sentencing phase after conviction of a felony, and in fact, Bun’s juvenile records were admitted at the sentencing hearing for the trial court’s consideration. See OCGA § 15-11-703. See also Burrell v. State, 258 Ga. 841 (7) (376 SE2d 184) (1989) (recognizing that former OCGA § 15-11-38 (b), now codified at OCGA § 15-11-703, specifically provides that a defendant’s juvenile records may be introduced during the sentencing phase of trial).